```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


JAMES IRWIN                      :
         Plaintiff,              :
                                 :
         v.                      :
                                 :   CIVIL NO. 3:05cv976(AHN)
KYRIC MAHNKE AND                 :
JOHN CAMPBELL, JR.               :
         Defendants.             :
```

RULING ON MOTION TO DISMISS AND MOTION TO STRIKE

The plaintiff, James Irwin ("Irwin"), brings this diversity action against Kymric Mahnke ("Mahnke") and John M. Campbell ("Campbell") (collectively, the "Defendants"), alleging actual defamation against Mahnke and constructive defamation against Campbell.  Now pending before the court is the Defendants' motion to dismiss and strike.  Specifically, the Defendants move to dismiss the complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), lack of improper venue under Fed. R. Civ. P. 12(b)(3), and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  Additionally, the Defendants move pursuant to Fed. R. Civ. P. 12(f) to strike paragraphs 12-14 and 21 of the complaint on the grounds that the allegations therein are immaterial and impertinent.  For the following reasons, the motion [doc. # 6] is GRANTED inasmuch as the court finds that it has no personal jurisdiction over the Defendants and that venue is improper in this district.

FACTS

According to the factual allegations in the complaint and the affidavit submitted in opposition to this motion, Irwin is a resident of Connecticut and the majority owner of Integrated Control Sytems, Inc. ("IMPAC"), a company that provides consulting services with respect to productivity development. There are at least two IMPAC companies, IMPAC Florida and IMPAC Connecticut. Mahnke and Campbell are both residents of South Carolina, where they are partners in the South Carolina law firm Nelson Mullins Riley & Scarborough, LLP ("Nelson Mullins").

In 2000 and thereafter, Nelson Mullins represented Ellcon National, Inc. ("Ellcon"), a South Carolina corporation, in an arbitration in North Carolina against IMPAC to recover amounts that Ellcon believed IMPAC had overbilled. The arbitration panel found in favor of Ellcon and awarded it damages in the amount of $1,067,429. In July 2000, IMPAC filed a petition to vacate the arbitration award in this district in an action captioned Integrated Control Sys., Inc. v. Ellcon-National Inc., Docket No. 3:00cv01295 (PCD). Sometime thereafter, the Chairman of the Board of IMPAC, F. Lee Bailey ("Bailey"), requested a meeting with the principals of Ellcon to discuss the possibility of settling the action to vacate the arbitration award. The meeting took place in Greenville, South Carolina, in July 2003, and was attended by Bailey, on behalf of IMPAC, and by Emil Kondra,

Ellcon's chairman, Doug Kondra, Ellcon's president, and the Defendants, also on behalf of Ellcon.

According to Irwin, Bailey learned prior to the meeting that Nelson Mullins had failed to conduct certain discovery. He also learned from Emil Kondra that Nelson Mullins had billed Ellcon a total of $350,000 for the period following the North Carolina arbitration award. These facts appear to have formed the basis of Impac's negotiation strategy at the South Carolina meeting.

At the meeting, Bailey raised questions about the amount of fees that Nelson Mullins had billed Ellcon, and to substantiate his assertions he gave Ellcon copies of deposition transcripts that he said Nelson Mullins had failed to review. After Bailey raised these issues, Mahnke, a new partner at Nelson Mullins, became agitated and stated that Irwin was a thief, that he would prove Irwin was a crook, and that Nelson Mullins was going to take away Irwin's yacht and his university. Campbell, a senior partner at Nelson Mullins, nodded in apparent agreement with Mahnke's assertions. Irwin claims that the Defendants' alleged comments caused Emil and Doug Kondra not to settle their claims against him.[1]

On June 15, 2005, Irwin filed this action in the District of Connecticut alleging that the comments made by Mahnke and

---

[1] The court assumes that the claims Emil and Doug Kondra would not settle involved the amount of the arbitration award.

3

endorsed by Campbell at the meeting constituted defamation of character.

## DISCUSSION

The Defendants move to dismiss the complaint on three grounds: (1) lack of personal jurisdiction, (2) improper venue, and (3) failure to state a claim upon which relief can be granted.  Additionally, the Defendants move to strike various portions of the complaint.  For the following reasons, the court concludes that it does not have personal jurisdiction over the Defendants and that venue is improper in this district. Accordingly, the Defendants' Rule 12(b)(2) and (3) motions to dismiss are granted and the case is transferred to the District of South Carolina.

I.   Personal Jurisdiction

First, the Defendants claim that the court lacks personal jurisdiction over them because the criteria set forth in the relevant Connecticut long-arm statute, Conn. Gen. Stat. § 52-59b, are not satisfied and their alleged conduct also does not satisfy the "minimum contacts" requirement of the Due Process Clause of the Fourteenth Amendment.  The court agrees.

When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of proving that the court has jurisdiction.  See Amerbelle Corp. v. Hommel, 272 F. Supp. 2d 189, 192 (D. Conn. 2003).  When no discovery has been

4

conducted, the plaintiff only needs to assert facts constituting a prima facie showing that the defendant's conduct was sufficient for the court to exercise personal jurisdiction. See id. at 192-93. The court must resolve all doubts in favor of the plaintiff, regardless of controverting evidence submitted by the defendant. See id.; United States Surgical Corp. v. Imagyn Med. Techs., Inc., 25 F. Supp. 2d 40, 44 (D. Conn. 1998). When deciding a motion to dismiss for lack of personal jurisdiction, the court may consider affidavits and other evidence submitted by the parties. See Ensign-Bickford Co. v. ICI Explosives USA, Inc., 817 F. Supp. 1018, 1026 (D. Conn. 1993).

In diversity cases, federal courts must look to the forum state's long-arm statute to determine if personal jurisdiction may be obtained over a nonresident defendant. See Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990). The court then must determine if the exercise of jurisdiction meets the "minimum contacts" requirement and thus satisfies constitutional due process. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Amerbelle, 272 F. Supp. 2d at 193.

    A.    The Connecticut Long-Arm Statute

The Connecticut long-arm statute, Conn. Gen. Stat. § 52-59b(a), confers personal jurisdiction over nonresident individuals provided certain conditions are met. The statute provides in relevant part:

> (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual ... who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer ... or a computer network ... located within the state.

Conn. Gen. Stat. § 52-59b(a).

The Defendants argue that none of the provisions of § 52-59b(a) confer personal jurisdiction over them because (1) they do not transact business in Connecticut; (2) they did not commit a tortious act in Connecticut or a tortious act outside Connecticut causing injury in Connecticut, but even if they had, the statute expressly excludes claims for defamation; (3) they do not own property in Connecticut; and (4) they do not use a computer or a computer network located within Connecticut.

Under the plain language of this Connecticut long-arm statute, there is no personal jurisdiction over the Defendants because the alleged defamation occurred outside of Connecticut and the statute expressly excludes defamation claims. See Conn. Gen. Stat. § 52-59b(a)(2) & (3); see also Jones v. Trump, 919 F. Supp. 583, 586 (D. Conn. 1996) (noting that the long-arm statute

is not available for defamation claims); <u>Anderson v. Bedford Assoc., Inc.</u>, No. 3:97CV1018, 1997 WL 631117, *2 (D. Conn. Sept. 19, 1997) (holding that the out-of-state defendant in a defamation case was not subject to personal jurisdiction because § 52-59(b)(a)(3) "on its face does not apply to . . . [a] defamation claim."). Moreover, sections (4) and (5) of the statute do not apply because there are no factual allegations that the Defendants owned, used, or possessed real property in Connecticut, or used a computer or computer network in Connecticut.

Further, contrary to Irwin's assertion, personal jurisdiction does not exist under § 52-59(b)(a)(1), the "transacts any business" prong, merely because Mahnke was admitted <u>pro hac vice</u> in this district in connection with IMPAC's action to vacate the arbitration award.[2] Indeed, Irwin's reliance on <u>Zartolas v. Nisenfeld</u>, 184 Conn. 471 (1981), in support of this claim is misplaced. Even though <u>Zartolas</u> construed the term "transacts any business" within the state to include a "single purposeful business transaction," <u>see id</u>. at 474, the facts in that case are distinctly different from those presented here. <u>Zartolas</u> involved a claim against nonresident

---

[2] Nor does Irwin address how this proffered basis of jurisdiction would confer personal jurisdiction over Campbell, who did not file an application for <u>pro hac vice</u> admission in the action to vacate the arbitration award.

7

grantors for breach of warranties in a deed conveying real property in Connecticut.  The court held that the execution of such a deed fell within the "transacts any business" prong of § 52-59b(a), reasoning that the deed conveyed land in Connecticut and that by owning land in Connecticut the defendants invoked the benefits and protection of Connecticut's laws of real property, including, as an incident of ownership, the right to sell the property.  It further reasoned that, if the defendants breached the warranties, the breach occurred because of an act committed in Connecticut.  See id. at 472-73, 475.

Unlike the facts in Zartolas, in this case the only Connecticut-related activity is the pro hac vice admission of one of the Defendants in connection with the action to vacate the arbitration award.  Whereas in Zartolas, the defendants could have anticipated litigation in Connecticut arising out of the warranties in the deed conveying title to land located in Connecticut, here the pro hac vice admission in an unrelated prior action in the District of Connecticut between IMPAC and Ellcon could not have caused the Defendants to anticipate being subject to personal jurisdiction in this state in a case involving statements about Irwin that were made in South Carolina.³  In addition, unlike the facts in Zartolas, Irwin's

---

³This conclusion is supported by numerous cases that have held that pro hac vice admission alone is not sufficient to confer personal jurisdiction over non-resident attorneys who are

defamation claim against the Defendants does not arise out of the Defendants' pro hac vice admission in that unrelated litigation between different parties.  See § 52-59b(a)(1) (conferring jurisdiction only where the cause of action arises out of the transaction of any business within the state).

In sum, Irwin has not alleged any facts that would subject the Defendants to personal jurisdiction in Connecticut under the relevant Connecticut long-arm statute.

B.   Due Process Considerations

Even if Irwin was able to make a prima facie showing of personal jurisdiction under the relevant Connecticut long-arm statute, it would be inconsistent with requirements of due process as set forth in International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) and its progeny to exercise personal jurisdiction over the Defendants in this district.  Irwin makes no allegations connecting Connecticut to the alleged defamation claims and he does not allege any specific contacts that the Defendants may have with Connecticut such that it would be reasonable for them to be subject to suit in Connecticut.

---

not otherwise subject to personal jurisdiction.  See Kronzer v. Burnick, No. C04-02125RS, 2004 WL 1753409, at *3 (N.D. Cal. Aug. 5, 2004) (holding that pro hac vice admission does not subject counsel to the jurisdiction of courts in the admitting state for all purposes); Cerberus Partners, L.P. v. Gadsby & Hannah, LLP, 836 A.2d 1113, 1121 (R.I. 2003) (holding that the law firm's pro hac vice admissions in six cases unrelated to representation of a Rhode Island client were insufficient to constitute "continuous and systematic" activity for personal jurisdiction purposes).

With respect to the constitutional fairness of extending personal jurisdiction under a long-arm statute, a plaintiff must show that a defendant's purposeful Connecticut-related activity demonstrates "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Id.  To establish that foreseeability, a plaintiff must demonstrate "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  World-Wide Volkswagen, 444 U.S. at 297; see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) (holding that the purposeful availment requirement is satisfied if the defendant's contacts with the forum State "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum" such that it "should reasonably anticipate being haled into court there.").  Contacts that are merely "random, fortuitous, or attenuated" do not satisfy the due process requirements.  Id. at 475.

Based on the alleged facts, there are insufficient contacts between the Defendants and Connecticut to satisfy due process. The meeting at which the allegedly defamatory statements were made took place in South Carolina.  That meeting concerned the possible settlement of a North Carolina arbitration award.  Both of the Defendants reside and work in South Carolina.  Neither of

the Defendants own property in Connecticut.  One of the Defendants has never been to Connecticut; and the other visited Connecticut only on one occasion, as a child.  Indeed, the only contacts that either of the Defendants had with Connecticut were the pro hac vice admission of one of them in the unrelated lawsuit and a telephone call one of them made to Bailey in Connecticut in connection with that action.  Without more, this activity does not constitute the substantial connection with Connecticut that is required by principles of due process. See Fox v. Boucher, 794 F.2d 34, 37 (2d Cir. 1986) ("It would offend 'minimum contacts' due process principles to force [the defendant], a Massachusetts resident, to litigate in a New York forum on the basis of one telephone call.");  Heinfling v. Colapinto, 946 F. Supp. 260, 264 n.2 (S.D.N.Y. 1996) ( "Nor can the alleged single phone call [defendant] made to Plaintiff ... provide the basis for long-arm jurisdiction over [defendant].... Nor would such an exercise of jurisdiction be likely to satisfy a constitutional minimum contacts analysis."); Grunberger Jewelers v. Leone, No. Civ. 303CV647, 2004 WL 1393608 *4 (concluding that two phone calls from the defendant's office to the plaintiff in Connecticut did not constitute a "connection with the forum [s]tate such that [the defendant] should [have] reasonably anticipated being haled into court [in Connecticut].").

There is also no merit to Irwin's argument that a nonresident's defamatory remarks about a Connecticut resident constitutes sufficient contact with Connecticut for the purpose of personal jurisdiction.  See Reynolds v. International Amateur Athletic Federation, 23 F.3d 1110 (6th Cir.), cert. denied, 513 U.S. 962 (1994) (rejecting the notion that a defendant comes within the personal jurisdiction of the court solely by making defamatory remarks about a resident plaintiff).  This is so even if there was factual support for Irwin's conclusory assertion that Mahnke, by his silence, adopted the defamatory statements that had been made in South Carolina in his phone call to Bailey in Connecticut.

For all of these reasons, it would violate the Connecticut long-arm statute and fundamental principles of due process for the court to exercise personal jurisdiction over the Defendants in this case.

II.  Venue

The Defendants also move to dismiss or transfer this action to the District of South Carolina pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue.  They maintain that venue in the District of Connecticut is improper because they do not reside in Connecticut, none of the events giving rise to Irwin's claims occurred in Connecticut, and they are not subject to personal jurisdiction in Connecticut.  In opposition, Irwin maintains that

12

venue is proper because a substantial part of the property that is the subject of this action is situated in Connecticut. The court agrees that venue is not proper in this district and finds Irwin's argument to be without merit.

Venue is governed by 28 U.S.C. § 1391(a) in cases where the court's subject matter jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. Under § 1391(a), diversity actions may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

In a motion to dismiss for improper venue, a plaintiff has the burden of showing that venue in the forum district is proper. See Indymac Mortgage Holdings, Inc. v. Reyad, 167 F. Supp. 2d 222, 237 (D. Conn. 2001) (citations omitted). The court must take all allegations in the complaint as true, unless contradicted by the defendant's affidavits, and when an allegation is so challenged, a court may examine facts outside the complaint to determine whether venue is proper. See id. (internal citations and quotations omitted). The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. See id. Should the defendant prevail on

its motion, the court still retains discretion to decline to dismiss the case in favor of a transfer to any district where the case could initially have been brought. See Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993).

Here, neither of the Defendants reside in Connecticut so venue is not proper under 28 U.S.C. § 1391(a)(1). Nor is venue proper under 28 U.S.C. § 1391(a)(3), as the court has already concluded that neither of the Defendants are subject to personal jurisdiction in this district. The court also rejects Irwin's argument that venue is proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the property that is the subject of this action is situated in Connecticut. This action involves a defamation claim based on statements the Defendants allegedly made in South Carolina; there is no property that is the subject of this action. The only property of Irwin that is referred to either in the complaint or the alleged defamatory statements themselves is property that is located in Florida, i.e., Irwin's yacht and IMPAC University[4]. The fact that the Defendants were representing Ellcon to enforce an arbitration award against IMPAC CT, a Connecticut company, does not render the assets of that company "property that is the subject of this action", primarily because IMPAC CT is not a party to this defamation action. Accordingly, venue is not proper in this district.

---

[4]IMPAC University of which Irwin is the Chairman is located in Punta Gorda, Florida.

Where venue is improper in one district, the court has discretion under 28 U.S.C. § 1406(a) to transfer rather than dismiss a case where doing so would further the interests of justice.[5]  See Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, (2d Cir. 2005) (noting that courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice).  A compelling reason for transfer exists where a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum.  See Open Solutions Imaging Sys., Inc. v. Horn, No. 3:03 CV 2077, 2004 WL 1683158 (D. Conn. July 27, 2004) (noting that most courts conclude that it is in the interest of justice to transfer rather than to dismiss, especially if the statute of limitations has run).  On the other hand, transfer would not be in the interest of justice where it would reward a plaintiff for lack of diligence in choosing a proper forum, i.e., where a non-diligent plaintiff files an action in an improper forum to avoid a statute of limitations defect through a venue transfer.  See Spar, Inc. v. Info. Res., Inc., 956 F.2d 392, 394-95 (2d Cir. 1992).

In this case, it appears that under South Carolina law, the statute of limitations on Irwin's defamation claim may have run.

---

[5] 28 U.S.C. 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

15

See S.C. Code Ann. § 15-3-550(1) (Supp. 1995) (setting forth a two-year statute of limitations for libel and slander causes of action). The defamation alleged by Irwin occurred in July 2003, and thus, under that South Carolina statute, his claims would have been time barred by July 2005. He filed this action in June 2005, a month before the statute of limitations would have run in South Carolina. Thus, there can be no claim that he opted to sue in Connecticut to avoid a time bar under South Carolina law. See id. If the court were now to dismiss this action for lack of venue, Irwin's claims would be time-barred in South Carolina, the jurisdiction in which both personal jurisdiction over the Defendants and venue would be proper. Thus, in the interests of justice the court will transfer this action to the District of South Carolina.

## CONCLUSION

Based on the foregoing, the Defendants' Motion to Dismiss for lack of personal jurisdiction and improper venue [doc # 6] is GRANTED. In the interests of justice, the court orders the Clerk to TRANSFER this action to the District of South Carolina pursuant to 28 U.S.C. § 1406(a).[6]

---

[6] Because the court does not have personal jurisdiction over the Defendants and because venue is improper in this district, the court has not considered the Defendants' motion to dismiss pursuant to Rule 12(b)(6) or the motion to strike pursuant to Rule 12(f).

SO ORDERED this 16th day of March, 2006, at Bridgeport, Connecticut.

```
                          /s/
                     Alan H. Nevas
               United States District Judge
```